John Buse (CA Bar No. 163156)
*pro hac vice* application pending
Justin Augustine (CA Bar No. 235561)
*pro hac vice* application pending
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone:    (415) 436-9682
Fax:          (415) 436-9683
jbuse@biologicaldiversity.org
jaugustine@biologicaldiversity.org

Attorneys for Plaintiff
CENTER FOR BIOLOGICAL DIVERSITY


UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA


| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ) <br><br>         Plaintiff ) <br><br> vs. ) <br><br> LARRY D. VOYLES, in his official capacity as Director, Arizona Game and Fish Department; ARIZONA GAME AND FISH DEPARTMENT, ) <br><br>         Defendants. ) | Civil Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      Plaintiff Center for Biological Diversity (the "Center") brings this case

under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, alleging that

Defendants Larry D. Voyles, in his official capacity as Director of the Arizona Game and

Fish Department, and the Arizona Game and Fish Department (collectively "AZGFD")

have violated and are violating the ESA by authorizing activities that "take" the jaguar

(*Panthera onca*), which has been protected as an endangered species in the United States

since 1997.  The Center seeks injunctive and declaratory relief to halt these ongoing

violations of federal law.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c)

and (g) (action arising under ESA citizen suit provision) and 28 U.S.C. § 1331 (federal

question jurisdiction).

3.      This Court may grant the relief requested under 16 U.S.C. § 1540(g) (ESA

citizen suit provision) and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive

relief).

4.      Pursuant to Section 11(g)(2)(A) of the ESA, the Center provided AZGFD

and the Secretary of the Interior with written notice of the Center's intent to file suit

based on AZGFD's violation of Section 9 of the ESA more than 60 days prior to the

commencement of this action.  16 U.S.C. § 1540(g)(2)(A).

5.      AZGFD has not remedied these violations of the ESA, and the Secretary of

the Interior has not acted to enforce the ESA.  Therefore, an actual controversy currently

exists between the parties within the meaning of the Declaratory Judgment Act.  28

U.S.C. § 2201.

6.      Venue is proper in the District Court for the District of Arizona pursuant to

16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(2) because a substantial part of the

events giving rise to the Center's claims occurred in this district.

## THE PARTIES

7.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit

corporation dedicated to the preservation, protection and restoration of biodiversity,

native species, and ecosystems.  The Center has over 43,000 members worldwide,

including members within this district.  The Center has offices in Tucson and Phoenix,

Arizona; Silver City, New Mexico; Washington, D.C.; San Francisco, Los Angeles, and

Joshua Tree, California; and Portland, Oregon.

8.      The Center's members and staff regularly visit, use, and enjoy areas where

jaguars have been observed, and plan to continue visiting, using, and enjoying these areas

in the future.  The Center and its members and staff derive environmental, recreational,

scientific, and aesthetic benefit from their use and enjoyment of these areas.  In addition,

the Center and its members and staff derive environmental, recreational, scientific, and

aesthetic benefit from the existence of jaguars in the wild, and from observing or

attempting to observe jaguars in the wild.  These interests of the Center and its members

and staff have been, are, and will be directly, adversely, and irreparably affected by

AZGFD's authorization of actions that threaten to harm or otherwise take jaguars.  The

Center and its members will continue to be injured by AZGFD's unlawful actions until and unless this Court provides the relief prayed for in this complaint.

9.      The Center has a long history of litigation to promote jaguar conservation in the United States.  In 1996, the Center sued to compel the Secretary to issue a final rule listing the jaguar as endangered.  This case was resolved in 1997, when the U.S. Fish and Wildlife Service extended endangered status to jaguars in the United States.  In 2003, the Center challenged the Secretary of the Interior's 1997 finding that designating critical habitat for the jaguar was not prudent, resulting in a court-approved settlement requiring a new critical habitat determination.  In 2007, the Center filed suit in this Court challenging the U.S. Fish and Wildlife Service's failure to prepare a recovery plan and designate critical habitat for the jaguar.  The Court set aside the decisions to not prepare a recovery plan and not designate critical habitat, and directed the Fish and Wildlife Service to issue new decisions on recovery planning and critical habitat by January 8, 2010.  *Center for Biological Diversity v. Kempthorne*, No. CV 07-372 TUC JMR, *appeal filed*.

10.     Defendant LARRY D. VOYLES is sued in his official capacity as Director of the Arizona Game and Fish Department.  Director Voyles is responsible for all actions carried out or authorized by the Arizona Game and Fish Department, and is responsible for complying with federal laws including the ESA.

11.     Defendant ARIZONA GAME AND FISH DEPARTMENT is the Arizona state agency charged with, among other things, conserving and managing the state's wildlife.

## STATUTORY BACKGROUND

12.     The ESA is intended to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered and threatened species."  16 U.S.C. § 1531(b).  "Conservation" means the use of all methods and procedures to bring any endangered or threatened species to the point at which the protections of the ESA are no longer necessary – that is, to recover species so that they no longer need legal protection.  16 U.S.C. § 1532(3).

13.     When a species is formally listed under the ESA as endangered or threatened, it receives the full range of protections afforded by the ESA.  Foremost among these protections is the Section 9 prohibition of unauthorized "take" of listed species.  Section 9 provides that it is illegal for any "person" to "take" any species listed as endangered.  16 U.S.C. § 1538(a)(1)(B).

14.     The term "take" is defined as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).

15.     The term "person" includes "any officer, employee, agent, department, or instrumentality … of any State, municipality, or political subdivision of a State … [or] any State, municipality, or political subdivision of a State …." 16 U.S.C. § 1532(13).

16.     The ESA prohibits not only direct take of endangered and threatened wildlife, but also prohibits any person from attempting to commit, soliciting another to commit, or causing to be committed an unauthorized take.  16 U.S.C. § 1538(g).  "[A]

governmental third party pursuant to whose authority an actor directly exacts a taking of an endangered species may be deemed to have violated the provisions of the ESA." *Strahan v. Coxe*, 127 F.3d 155, 163 (1st Cir. 1997).

17.     Section 10 of the ESA provides certain exceptions to the general take prohibition of Section 9.  Under Section 10(a)(1)(A), the Secretary of the Interior (or, in the case of marine species, the Secretary of Commerce) may permit take "for scientific purposes or to enhance the survival of the affected species []."  16 U.S.C. § 1539(a)(1)(A).  Section 10(a)(1)(B) provides that the Secretary may permit taking that "is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity."  16 U.S.C. § 1539(a)(1)(B).

18.     Section 6(c) of the ESA authorizes the Secretary of the Interior to enter into cooperative agreements to further the purposes of the ESA "with any State which establishes and maintains an adequate and active program for the conservation of endangered species and threatened species."  U.S.C. § 1535(c).

## FACTUAL BACKGROUND

19.     The jaguar – a "muscular cat … with relatively short, massive limbs and a deep-chested body" – is the largest contemporary cat native to the Western Hemisphere. 62 Fed. Reg. 39147.  Jaguars are generally buff-colored with distinctive black rosettes.

20.     Jaguars are top predators in the ecosystems they inhabit.  The loss of top predators such as jaguars can severely disrupt natural ecosystems.  Jaguars are also considered an umbrella species.  An umbrella species is one that covers a large area or

range of ecosystems in its daily or seasonal movement.  Accordingly, conservation efforts that protect jaguars will necessarily protect many other species.

21.     The U.S. Fish and Wildlife Service has recognized the jaguar as an endangered species since 1972, but initially applied this status only to jaguars south of the United States-Mexican border.  On July 22, 1997, following a lawsuit by the Center, the Secretary of the Interior issued a final rule listing the jaguar as an endangered species in the United States.  62 Fed. Reg. 39147.

22.     In North America, the jaguar occurs in Mexico and parts of the southwestern United States.  Historical accounts report jaguars in Arizona, New Mexico, California, Texas, Louisiana, the Carolinas, and possibly Colorado.  Fossil records indicate jaguars were also found in Florida.

23.     Jaguars are extremely secretive and difficult to observe in the wild. Nonetheless, there have been dozens of confirmed sightings of jaguars in the United States since 1996, all in the border regions of Arizona and New Mexico, and mostly by automated cameras and hunters.  These sightings represent at least four individual jaguars.  At least one of these observed jaguars, known as "Macho B," appears to have resided in the United States for long periods.

24.     On or about February 18, 2009, researchers conducting a study of habitat connectivity for mountain lions and black bears discovered Macho B in a snare trap in an area near the international border southwest of Tucson known to have been recently visited by this jaguar.  The study, known as the Large Carnivore Habitat Connectivity and

Population Persistence Study ("Large Carnivore Study"), was authorized and funded by AZGFD, and was carried out by employees, agents, and/or contractors of AZGFD.

25.     Following his capture, Macho B was anesthetized, fitted with a tracking collar, and released.  At the time of his capture, Macho B is believed to have been over 15 years old – the oldest known jaguar found in the United States.

26.     After his release, Macho B remained within a few miles of the capture site. Based on location data showing reduced movement and foraging, however, AZGFD concluded that Macho B's health might be in jeopardy, and determined that he should be recaptured for veterinary attention.  After at least one unsuccessful capture attempt, he was recaptured on March 2, 2009, sedated, and transported by helicopter to the Phoenix Zoo.  AZGFD officials initially stated that a physical assessment showed Macho B had normal vital signs, but subsequent tests suggested that he was suffering from acute kidney failure, and he was euthanized the same day.  Evidence from Macho B's necropsy indicates that the stress of capture and sedation may have contributed to the jaguar's death.

27.     Other recent efforts to capture and/or collar jaguars in northern Mexico have resulted in death or injury to their subjects.  In two of three reported incidents, jaguars died shortly after capture, and in the third instance the jaguar disappeared and its fate is unknown.

28.     AZGFD has asserted that it has an incidental take permit pursuant to ESA Section 10(a)(1)(B) that authorized it to take jaguars in connection with the Large Carnivore Study.

29.     AZGFD has also asserted that it is authorized to take jaguars in connection with the Large Carnivore Study through an ESA Section 10(a)(1)(A) permit issued pursuant to AZGFD's Cooperative Agreement with the U.S. Fish and Wildlife Service under Section 6(c) of the ESA.

30.     AZGFD is the founder of and a key participant in the Jaguar Conservation Team, a cooperative partnership that also includes other public agencies and private stakeholders.  AZGFD has chaired the Jaguar Conservation Team since its inception in 1997.  Through its leading role in the Jaguar Conservation Team, AZGFD has developed plans to capture and/or collar jaguars.

## GENERAL ALLEGATIONS

31.     On the Center's information and belief, based on several requests for documentation of such authorization, AZGFD does not have a valid incidental take permit under Section 10(a)(1)(B) of the ESA authorizing it to incidentally take jaguars in connection with the Large Carnivore Study or any other activity.

32.     AZGFD likewise does not have a valid permit under Section 10(a)(1)(A) of the ESA authorizing it to purposefully take jaguars in connection with the Large Carnivore Study or any other activity.

33.     AZGFD has stated that it has suspended trapping and snaring as part of the Large Carnivore Study.  However, it incorrectly asserts that it currently has the permit authority to capture and/or collar jaguars in connection with the Large Carnivore Study and other activities.  Accordingly, activities that may result in jaguar capture and/or

collaring may be resumed at any time without notice to the Center or the public, and without a valid take permit.

34.     AZGFD's reliance on its purported authority under ESA Section 10(a)(1)(A) also indicates that it may now be conducting or authorizing, and may in the future conduct or authorize, activities besides the Large Carnivore Study that may result in jaguar capture and/or collaring without notice to the Center or the public, and without a valid take permit.

35.     AZGFD's reliance on its purported authority under ESA Section 10(a)(1)(A) further indicates that it may now be conducting or authorizing, and may in the future conduct or authorize, activities that may result in the take of other listed species without a valid take permit.

**CLAIM FOR RELIEF**
(Unauthorized Take In Violation of ESA)

36.     Each and every allegation set forth in this Complaint is incorporated herein by reference.

37.     AZGFD's authorization of snaring and trapping in connection with the Department's Large Carnivore Study has caused and will continue to cause take of jaguars in violation of Section 9 of the ESA and its implementing regulations.  16 U.S.C. § 1538(a)(1).

38.     AZGFD's authorization of jaguar capture and/or collaring in connection with the Department's Large Carnivore Study has caused and will continue to cause take

of jaguars in violation of Section 9 of the ESA and its implementing regulations.  16 U.S.C. § 1538(a)(1).

39.    AZGFD's authorization of activities in connection with the Department's ESA Section 6 Cooperative Agreement has caused and will continue to cause take of jaguars in violation of Section 9 of the ESA and its implementing regulations.  16 U.S.C. § 1538(a)(1).

40.    The Center is injured by AZGFD's ongoing violations of the ESA.

41.    The ESA's citizen suit provision authorizes the Center to bring this action and obtain injunctive relieve to remedy these ongoing violations of the ESA.  16 U.S.C. § 1540(g)(1).

## PRAYER FOR RELIEF

WHEREFORE, the Center respectfully requests that the Court enter judgment providing the following relief:

1.    A declaratory judgment that Defendants do not have a valid incidental take permit pursuant to Section 10(A)(1)(B) authorizing take of jaguars in connection with the Large Carnivore Study;

2.    A declaratory judgment that Defendants do not have a valid take permit pursuant to Section 10(A)(1)(A) authorizing the purposeful capture and/or collaring of jaguars in connection with the Large Carnivore Study or any other activity;

3.    A declaratory judgment that Defendants are violating Section 9 of the ESA by authorizing, administering, and allowing activities that take jaguars;

Complaint for Declaratory and Injunctive Relief                                             11

4.      An order enjoining Defendants from continuing to violate Section 9 of the

ESA by authorizing, administering, and allowing activities that take jaguars;

5.      An order enjoining Defendants from violating Section 9 of the ESA by

capturing and/or collaring any jaguar unless and until the Department obtains a permit

expressly authorizing such capture;

6.      Award the Center's costs, including reasonable attorney's fees and expert

witness fees; and

7.      Provide such other relief as the court deems just and proper.


Dated:          September 24, 2009          Respectfully Submitted,



                                            s/ John Buse
                                            John Buse (CA Bar No. 163156)
                                            *pro hac vice* application pending
                                            351 California Street, Suite 600
                                            San Francisco, CA 94104
                                            Telephone:    (415) 436-9682

                                            Attorney for Plaintiff
                                            CENTER FOR BIOLOGICAL DIVERSITY